STATE, THE PENNSYLVANIA RAILROAD COMPANY, PROSECUTOR, v. THE MAYOR AND ALDERMEN OF JERSEY CITY.

1. The legislative power of Jersey City is competent to regulate by ordinance the use of the streets by railroad companies.
2. Such regulations must not be unreasonable.
3. If such ordinance be unreasonable only in its application to one or two streets, the entire ordinance on that account will not be vacated; the remedy is to resist its enforcement in such localities.

On error to the Supreme Court.

For the plaintiff in error, *James B. Vredenburgh.*

For the defendant in error, *William Brinkerhoff.*

The opinion of the court was delivered by

BEASLEY, C. J. The single question for solution in this case is, whether a certain ordinance passed by the defendant

in error is so unreasonable that it must be judicially declared to be void.

The particular clause of such ordinance that is supposed to render it liable to the charge of illegality is the following: "That it shall not be lawful for any person or persons, body or bodies corporate, their engineers, agents or servants, to obstruct or prevent the free and uninterrupted use by the public of the intersections caused by the crossing of any street or thoroughfare by any railroad or track within the limits of Jersey City for a longer period than three minutes at one time."

Counsel for the plaintiff in error urged three objections to the validity of this by-law, which will be briefly considered *seriatim*.

First, it was insisted that the defendant in error was not vested by the legislature with the capacity necessary to pass this ordinance.

This position is plainly untenable. To say nothing with respect to the implied power over such a subject, inherent in every municipality, it is sufficient to refer to the sixth and eleventh clauses of the twenty-fourth section of the charter of Jersey City passed in 1871 (*Pamph. L., p.* 1106,) which authorizes the enactment of ordinances, first, "to regulate and control the running of locomotives, &c., through the streets of Jersey City," and second, "to regulate the use of streets and public places by foot passengers, vehicles, railways and engines."

This language is too plain, in my opinion, to need explanation; it, in terms, confers the authority upon the city to deal legislatively with the subject matter embraced in the ordinance in dispute.

In the second place, it is urged that the restriction imposed by this by-law illegally interferes with the chartered rights and privileges of the plaintiff in error.

But this exception is also untenable upon the supposition that such restriction is not unreasonable, for it cannot be rationally contended that because the railroad company possesses the franchise to run its trains, that it can run such trains

through the cities of the state without regard to the lives, property or convenience of the public at large. Such a claim would be preposterous, and yet it would seem to be the only ground on which a city ordinance can be attacked which, within rational bounds, regulates the use of the public streets by the locomotives and trains of the railroad companies. I am unable to see even a color of plausibility in this position.

The third and last ground was that the ordinance in question is unreasonable, and the stress of the argument was properly laid on this point.

If this by-law be subject to this imputation, there can be no doubt that it would be the duty of this court to pronounce it a nullity. The judicial power so to proceed has not been drawn in question in this case, and it would be quite as absurd to say that the city authorities, under the legislative grant of authority heretofore cited, can, unreasonably, restrict the operations of the business of the plaintiff in error within the municipal limits, as was the claim of the railroad company to be beyond all municipal control in the matter. No rational person would contend that a by-law forbidding a railroad company to run its trains through its corporate domain at a faster rate than a mile an hour would be possessed of any legal force whatever. In the case of *Commonwealth* v. *Robertson*, 5 *Cush.* 438, which presented a question as to the reasonableness of an ordinance regulating the mode of placing carriages at theatres and places of amusement, it was said: " The court, doubtless, have power to deny effect to a by-law obnoxious because unreasonable. It is, however, a power to be cautiously exercised," &c. This is a correct expression of the rule of law and the method of its use.

In this department of the law the difficulty has been with the application of this legal principle to various sets of facts. Whether a given by-law be reasonable or the reverse is usually a practical question, and not one that depends on abstract considerations of right or wrong. If we were, in the present instance, called upon to decide upon the matter principally involved in the arguments of counsel, we would be compelled

Penna. R. R. Co. v. Jersey City.

to enter upon an investigation of many circumstances, and put under consideration the character and importance of the business necessities of the plaintiff in error on the one side, and of the rights and convenience of the public on the other, and by such a comparison, in the main, to declare whether this police regulation be rationally necessary or injudiciously oppressive; but it seems to me that on this occasion such an inquiry does not, in any wise, arise. This proceeding in error seeks the abolition of this ordinance *in toto*, and, as a whole, it is plainly not open to the imputation of unreasonableness. Its scope is to put upon a proper footing the use of railroad trains within the municipal bounds, and there is no pretence that it presses unduly upon any of such companies, except that it harasses the plaintiff in error in passing its numerous trains across three certain streets near its terminal depot. But conceding this allegation to be true, that the business of the plaintiff in error at this particular locality is by that ordinance unreasonably embarrassed and burthened, such a vice in the by-law would not render it generally, but only specially inefficacious—that is, the court would not vacate the entire ordinance, but merely refuse to put it in effect in that part of it that was thus unreasonable. If the complaint of the plaintiff in error be well founded therein, the remedy is to object to the validity of the ordinance in the penal suits for the obstruction of the streets referred to, and in that mode place before the courts the limited question whether the ordinance be not a nullity with respect to that particular locality. But the ordinance, in its general effect, is unobjectionable, and therefore it cannot be totally set aside, and the consequence is the judgment of the Supreme Court should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, PARKER, REED, SCUDDER, BROWN, CLEMENT, COLE, PATERSON. 11.

*For reversal*—None.